**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

HOSEA PROJECT MOVERS, LLC, et al.,          Lead Case No. 1:15-cv-799

            Plaintiffs,          Barrett, J.
                                     Bowman, M.J.

      v.


WATERFRONT ASSOCIATES, INC.,  et al.,

            Defendants.

                          ****************************

UNITED STATES FIRE INSURANCE CO.,          Case No. 1:15-cv-46

            Plaintiff/Crossclaim Plaintiff
      v.


WATERFRONT ASSOCIATES, INC.,

            Defendant/Third-Party Plaintiff,
      v.


C&B MARINE, LLC,

            Third-Party Defendant/Crossclaim Defendant


**REPORT AND RECOMMENDATION**

These recently consolidated cases have been referred for all pretrial proceedings to the undersigned magistrate judge by U.S. District Judge Michael R. Barrett.  (*See* Doc. 42).  Currently pending are two motions to dismiss all claims filed by Hosea Project Movers, LLC and Hosea Demolition Movers, LLC (hereinafter "Hosea") in Lead Case

No 15-cv-799.   Also pending is a separate motion for summary judgment filed by Waterfront Associates (hereinafter "Waterfront") regarding the same claims.

For the reasons that follow, I recommend denying Waterfront's motion to dismiss, granting the motion to dismiss filed by C&B Marine, LLC, and partially granting Waterfront's motion for summary judgment.  By separate Order, the remainder of the consolidated cases have been set for a status conference before the undersigned.

## I.    Background

Each of the consolidated cases involves slightly different parties and distinct claims, but arises out of the same core event: the August 5, 2014 sinking of the Waterfront Barge (hereinafter "Barge").[1] The cause of the sinking of the Barge, and who was responsible, remain among the common disputes that all parties seek to resolve. For the Court's convenience, the original cases are referred to as the Insurance Policy case (Case No. 1:15-cv-46) and the Hosea-Waterfront Contract case (Lead Case No. 1:15-cv-799).  Before turning to the pending motions in the Hosea-Waterfront Contract case, the Court briefly summarizes the facts of both cases.

### A.  The Insurance Policy Case

After the Barge sank, its insurer, United States Fire Insurance Company ("U.S. Fire"), advanced $500,000.00 of the policy proceeds on Waterfront's behalf to C&B Marine, LLC ("C&B"), to remove and dispose of the sunken vessel.  The payment was advanced under a reservation of rights as to coverage issues.  U.S. Fire later filed suit against Waterfront Associates ("Waterfront") seeking judgment to declare its insurance

---

[1]Though the Barge once contained a well-known floating restaurant called The Waterfront, restaurant operations ceased in 2011, after the first of what proved to be a series of calamitous events.

policy to be void *ab initio*, or in the alternative, to declare that there is no coverage and ordering Waterfront to repay U.S. Fire $500,000.00 plus interest, costs, and attorney's fees. U.S. Fire maintains that the policy is void in part because Waterfront failed to disclose or misrepresented "the full condition" of the vessel - namely, that "it was in a state of advanced deterioration and wastage and was not in a serviceable or …seaworthy condition." (*See* Case No. 1:15-cv-46, U.S. Fire Complaint at ¶¶16-17). U.S. Fire further alleges that Waterfront misrepresented its intentions to reopen the Barge as an operating restaurant. (*Id.* at ¶¶ 19-20).

Waterfront filed a Counterclaim against U.S. Fire for breach of its contract of insurance. Waterfront also alleges bad faith, and seeks a judgment "of Waterfront's actual losses and attorney's fees and expenses and punitive damages in the amount of $3,400,000." (Waterfront's Counterclaim at 14).

Waterfront also filed a third party complaint against C&B Marine, LLC (hereinafter "C&B"), alleging that C&B's actions caused the Barge to sink.[2] U.S. Fire followed suit with a cross-claim against C&B, contingent upon U.S. Fire being subrogated to Waterfront for the claimed loss of the Barge. If C&B is responsible for the sinking, U.S. Fire seeks to hold C&B liable for the $500,000 in insurance proceeds that U.S. Fire previously advanced to pay for the disposal of the sunken Barge.

### B. The Hosea-Waterfront Contract Case

The now-consolidated second case arose out of the same event – the sinking of the Barge - but is based on an entirely separate contract for services that Hosea

---

[2]Waterfront alleges that the Barge was struck by another barge in June 2014 while under C&B's care, custody, and control, and additionally, that C&B was negligent when it repositioned the Barge the day before the Barge sank.

entered into with Waterfront on July 3, 2014.  The contract required Hosea to remove personal property from the Barge, use its "best efforts" to sell the Barge on Waterfront's behalf, and, if the Barge could not be sold, to demolish the Barge.

As stated, the Barge sank on August 5, 2014, just a month after the execution of the Hosea-Waterfront contract.  The sinking of the Barge simultaneously sank Hosea's prospects for selling the Barge to an approved purchaser or for scrap value. Additionally, Waterfront refused to make a final payment under the contract for the removal of personal property from the Barge, since Hosea had not completed removal of the designated property at the time the Barge sank.

In December 2015, Hosea filed suit against Waterfront and C&B, seeking to recover the revenue that slipped away with the Barge under the Ohio River.  When Waterfront and C&B moved to dismiss, Hosea filed an amended complaint that includes headings for Counts I-VI.  Count I asserts a claim for a constructive trust over any insurance proceeds recovered by Waterfront in the Insurance Policy case.  Count II alleges that Waterfront breached its contract by obstructing Hosea's access to the Barge, thereby preventing Hosea from completing its performance.  In Count III, Hosea asserts a separate claim against C&B for tortious interference with the Hosea-Waterfront contract. In Count IV, Hosea brings a claim against both Waterfront and C&B for conversion of Hosea's property.  Count V asserts that both Waterfront and C&B are liable for negligence.  Last, Count VI asserts "legal malice" and seeks punitive damages and attorney's fees.   Hosea alleges that jurisdiction lies in this Court under admiralty law.

In lieu of filing an Answer, the Defendants filed new motions to dismiss. Waterfront's motion seeks dismissal on grounds that this Court lacks subject matter jurisdiction over any of the claims asserted.  C&B's separate motion seeks dismissal for failure to state a claim.

The parties' Rule 26(f) report reflects agreement to a stay of all discovery pending this Court's ruling on pending motions to dismiss, (Doc. 20), and it does not appear that the parties have engaged in any formal discovery in the Hosea-Waterfront Contract case.  (*See* Doc. 28, motion for status conference confirming that no formal discovery has occurred).  However, based in part on discovery in the related Insurance Policy case, Waterfront filed an additional motion for summary judgment in the Hosea-Waterfront contract case.

## II.    Analysis of Pending Motions To Dismiss

### A.  Standard of Review

Waterfront's motion to dismiss falls under Rule 12(b)(1), and attacks the factual predicate asserted by Hosea to support subject matter jurisdiction.

> Generally, a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction falls into one of two categories: facial attacks and factual attacks. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994) *cert. denied,* 513 U.S. 868, 115 S. Ct. 188, 130 L.Ed.2d 121 (1994); *see also Wenz v. Rossford Ohio Transp. Improvement Dist.,* 392 F.Supp.2d 931, 934 (N.D. Ohio 2005). A facial attack challenges the sufficiency of the pleading itself, and requires the Court to take all of the material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Ritchie,* 15 F.3d at 598 (citing *Scheuer v. Rhodes,* 416 U.S. 232, 235–37, 94 S. Ct. 1683, 40 L.Ed.2d 90 (1974)). In contrast, a factual attack challenges the factual existence of subject matter jurisdiction, *Ohio Hosp. Ass'n v. Shalala,* 978 F.Supp. 735, 739 (N.D. Ohio 1997), and requires a court to "weigh the conflicting evidence to arrive at the factual predicate that subject-matter

[jurisdiction] does or does not exist." *Gentek Bldg. Prods. v. Sherwin–Williams Co.,* 491 F.3d 320, 330 (6th Cir. 2007)….

When assessing a factual attack on subject matter jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction, *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134 (6th Cir. 1996), and "no presumptive truthfulness applies to the factual allegations...." *Ritchie,* 15 F.3d at 598 (internal citations omitted). Instead, "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*; *see also RMI Titanium,* 78 F.3d at 1135. Moreover, "a district court is to probe the facts and assess the validity of its own jurisdiction. In doing so, the Court has a wide discretion to consider affidavits and the documents outside the complaint, and may even conduct a limited evidentiary hearing if necessary." *Shalala,* 978 F. Supp. at 739 (relying on *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990)); *see also Kroll v. United States,* 58 F.3d 1087, 1090 (6th Cir. 1995) ("The Court may examine evidence of its power to hear a case, and must make any factual findings to determine whether it has jurisdiction.").

*In re Steinle*, 835 F.Supp.2d 437, 440–41 (N.D. Ohio 2011) (dismissing two of six complaints filed in consolidated case for lack of subject matter jurisdiction under maritime law).

In contrast to Waterfront's jurisdictional challenge, C&B seeks dismissal of Hosea's claims under Rule 12(b)(6), for failure to state a claim.  Under Rule 12(b)(6), this Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).  At the same time, this Court

need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true. *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000). To state a valid claim, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory. *Mezibov v. Allen,* 411 F.3d 712, 716 (6th Cir. 2005), *cert. denied,* 547 U.S. 1111, 126 S. Ct. 1911, 164 L.Ed.2d 663 (2006).

*Id.*, 508 F.3d at 336–37.  While determination under Rule 12(b)(6) rests primarily upon the allegations of the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)) (emphasis omitted).

### B.  Waterfront's Motion to Dismiss for Lack of Jurisdiction

I begin with analysis of Waterfront's motion since without jurisdiction, this Court has no authority to rule on other motions in the case.  The question of this Court's subject matter jurisdiction is not mooted by the consolidation of this case with Case No. 1:15-cv-46.  *See, generally, Heck v. Board of Trustees, Kenyon College*, 12 F. Supp.2d 728, 747 (S.D. Ohio 1998) (Courts look at each component action in a consolidated case independently to determine whether there is subject matter jurisdiction, since consolidated actions do not lose their separate identity upon consolidation); *accord In re Steinle*, *supra* (dismissing two complaints in consolidated case involving six lawsuits, for lack of subject matter jurisdiction).

Waterfront presents its jurisdictional challenge in simple terms: "[A] contract to remove materials from a barge and to broker the [B]arge for sale does not invoke admiralty jurisdiction merely because a barge is involved."  (Doc. 18 at 1).[3]   In response, Hosea maintains that the Hosea-Waterfront contract constitutes a "maritime contract," over which this Court should exercise admiralty jurisdiction under 28 U.S.C.

---

[3]Waterfront also challenges Hosea's reference to diversity jurisdiction.  Because Hosea concedes that complete diversity is lacking, further discussion is unnecessary.

§1333.  Alternatively, Hosea argues that admiralty jurisdiction attaches to its claims of negligence.

### 1.  The Hosea-Waterfront Contract Is Not A Maritime Contract

I conclude first that the Hosea-Waterfront contract is not the type of "maritime contract" that could support jurisdiction.  Admiralty jurisdiction over contracts "depends upon the nature and character of the contract, and the true criterion is whether [the contract] has reference to maritime service or maritime transactions." *New Hampshire Ins. Co. v. Home Sav. and Loan Co. of Youngstown, Ohio*, 581 F.3d 420, 423 (6th Cir. 2009) (quoting *Norfolk S. Ry. Co. v. Kirby,* 543 U.S. 14, 24 (2004)) (additional quotation marks, citations, and editorial marks omitted); *see also generally The Thomas Barlum*, 293 U.S. 21 (1934).  A contract does not fall under maritime law merely because the services to be performed have some reference to a ship.  Instead, the Sixth Circuit has stressed that trial courts must look at the contract at issue "as a whole" and ascertain whether the "primary objective" of the contract is maritime commerce.

> After the [Supreme] Court's decision in *Kirby*, there can be no doubt that our inquiry into whether a contractual dispute falls within our maritime jurisdiction must focus on whether the contract's "*primary objective*" has an "essentially maritime nature" and relates to "maritime commerce." 543 U.S. at 24–25, 125 S. Ct. 385 (finding that the contracts at issue were "maritime contracts" because "their primary objective is to accomplish the transportation of goods by sea from Australia to the eastern coast of the United States" (emphasis added)). In conducting this inquiry, *Kirby* also requires us to consider the contract as a whole. *See id.* at 24–26, 125 S.Ct. 385.

*New Hampshire Ins. Co.*, 581 F.3d at 424 (emphasis original).  The Sixth Circuit also has made clear, consistent with the majority of other courts, that contracts for the sale of a vessel, or for procuring a buyer for a vessel, are not maritime contracts.  *Cary Marine,*

8

*Inc. v. Motorvessel Papillon*, 872 F.2d 751 (6th Cir. 1989); *see also generally Lynnhaven Dauphin Corp. v. E.L.O. Enterprises*, 776 F.2d 538 (5th Cir. 1985).

The language of the contract attached to the amended complaint confirms that the "primary objectives" of the contract were for Hosea to: (1) remove and transport personal property from the Barge; (2) broker the Barge for sale, and (3) demolish and sell the Barge for scrap value if no buyer could be found.  None of these tasks are of an "essentially maritime nature," nor does the contract have anything to do with the repair or service of the Barge.  In addition, the damages sought by Hosea do not arise under maritime law, but under state law, if at all.

In its opposition to Waterfront's motion, Hosea asserts that the contract imposes upon Hosea an "obligation to repair and prepare the Waterfront Barge for resale."  (Doc. 22 at 9).  But the express terms of the contract include no such "obligation to repair." Instead, incidental to the intended sale of the vessel, the contract expressly grants Hosea only a limited and permissive "right to prepare the Barge for marketing and sale by improving its appearance, only so long as it receives the prior consent of Waterfront…to any such improvements."  (Doc. 15 at 12, emphasis added).

Hosea also claims that its "right and obligation to cause the Barge to be transported from its mooring and to be stored at Warsaw, Kentucky" somehow confers maritime jurisdiction.  Again, however, examination of the precise language to which Hosea refers confirms that the obligation constitutes no more than an incidental requirement to effectuate the anticipated future sale or demolition, and is not itself a "primary objective."  The language reads:

9

> Following the Removal Completion Date and after the current prospective purchasers have toured the Barge (which is estimated to be August 16, 2014), [Hosea] will cause the Barge to be moved from its current location to and moored at Mike Kautzman Landing in Warsaw, Kentucky…at [Hosea's] expense….

(Doc. 15 at 12).[4]  In context, it is clear that the language required Hosea to make arrangements and pay for the expense of a third party (like C&B) to move the Barge after Hosea completed its removal of certain personal property, as opposed to Hosea itself transporting the vessel.[5]  In short, based upon the controlling authority of the Supreme Court's decision in *Kirby* and the Sixth Circuit's analysis in *New Hampshire Ins. Co.*,[6] the undersigned finds that the primary objective of the Hosea-Waterfront contract was not maritime in nature.

### 2.  Hosea's Negligence Claim Arguably Pleads A Maritime Tort

Having determined that there is no admiralty jurisdiction over the contract, the Court next examines the only other possible basis for such jurisdiction:  Hosea's negligence claim against Waterfront and C&B.

Waterfront argues that Hosea cannot rest on this claim for maritime jurisdiction, because Hosea lacks standing to assert any claim based upon the sinking of a vessel in which Hosea had no ownership interest.  Standing to sue is a jurisdictional prerequisite.

---

[4]Because the Barge sank prior to Hosea completing the removal of designated personal property, the obligation for Hosea to make arrangements to move the Barge to Warsaw "following" the "Removal Completion Date" never arose.

[5]The transport of a barge on navigable waters is highly regulated.  Hosea neither alleges nor argues that it was authorized to physically move the Barge.  Instead, it alleges that Hosea Project Movers operates as a general "business relocating businesses" and that Hosea Demolition Services handles "demolition and related tasks."  (Doc. 15 at ¶¶ 2-3).  By contrast, C&B is alleged to be a "'full-service marine company' specializing in river transportation including barge towing by tug boat."  (*Id.* at ¶ 6).

[6]Hosea relies chiefly on case law from New York and Illinois that is both factually distinguishable, and contrary to controlling Sixth Circuit authority.  *See, e.g., Kalafrana Shipping Ltd. v. Sea Gull Shipping Co.*, 591 F. Supp.2d 505 (S.D. N.Y. 2008); *Orgulf Transport Co. v. Hill's Marine Enterprises, Inc.*, 188 F. Supp.2d 1056 (S.D. Ill. 2002).

*See Tartt v. Wilson County, Tenn.*, 982 F.Supp.2d 810, 823 (M.D. Tenn. 2013) (explaining that standing permits a plaintiff to invoke federal jurisdiction only if the plaintiff has a "personal stake in the outcome of the controversy.") (internal quotation marks and additional citations omitted). Although Hosea would have been entitled to a share of the profits if Hosea had been able to sell or scrap the Barge, the contract specified that "[t]itle and ownership of the Barge will remain with Waterfront until transfer to an approved purchaser…or demolition…." (Doc. 15 at 12). Waterfront argues that Hosea's position is analogous to that of a real estate broker who has contracted to sell a house that is destroyed prior to sale by fire or flood. Just as a real estate broker generally could not sue the owner of the home for his lost commission under those circumstances, neither, argues Waterfront, may Hosea sue for its loss. In other words, Waterfront maintains that admiralty jurisdiction cannot arise out of a maritime tort that relates solely to a Barge in which Hosea had no ownership interest.

Waterfront's analogy is an imperfect one, however, because the real estate broker's commission prior to securing a buyer remains an uncertain hope. By contrast, the contract here provided for a broker's "commission" even if Hosea could not secure a buyer for the Barge. In that event, Hosea was to demolish and sell the Barge for scrap value, whereupon it would still receive a share of the proceeds on terms specified under the contract.[7]

---

[7]In addition, while Waterfront fails to cite to any authority, secondary sources suggest that whether a real estate broker can recover a commission when a sale falls through or property is destroyed may depend on the facts presented. *See, e.g., Burke, B., The Broker's Commission: The Majority Rule*, Law of Real Estate Brokers § 5.02 (2017).

Notably, Waterfront does not dispute that it owed Hosea some duty of care, whether as a business invitee or under the contract. Certainly, the contract anticipated that Waterfront would provide Hosea "access" to a Barge that was floating on the Ohio River, not submerged beneath it.[8] Based on the seminal case of *Sisson v. Ruby*, 497 U.S. 358 (1990), I conclude that Hosea has adequately asserted maritime jurisdiction over its negligence claims. In so concluding, the undersigned returns to the previously noted distinction between the failure to plead federal jurisdiction under Rule 12(b)(1) and the failure to state a claim under Rule 12(b)(6). *See Bush v. State Indus., Inc.*, 599 F.2d 780, 785 (6th Cir. 1979)("the fact that a complaint may not state claim upon which relief can be granted is of no relevance to the question of subject matter jurisdiction"); *Cherokee Exp. Inc. v. Cherokee Exp.. Inc.*, 924 F.2d 603, 609 (6th Cir.1991)("question of whether a complaint states a cause of action or a claim for relief calls for a decision on the merits not for a determination of jurisdiction"); *accord Pitstick Farms, Inc. v. Sanders Sales and Service, Inc.*, 2005 WL 1151684 (S.D. Ohio May 16, 2005).

Even if Hosea's negligence claim fails for other reasons, this Court cannot agree that the claim does not invoke maritime jurisdiction, since the claim centers on the issue of which party was to blame for the sinking of the Barge (either Waterfront or C&B, according to Hosea's amended complaint). Under the test set forth in *Sisson*, Hosea's allegations of negligence that led to the sinking of the Barge involve activities: (1) "likely to disrupt [maritime] commercial activity, and (2) bear a "substantial relationship" with "traditional maritime activity." *Id.* at 364-367. Having determined that admiralty

---

[8]Hosea's negligence claim assumes the existence of a duty of care owed by both Waterfront and C&B to Hosea to prevent the Barge from sinking. Whether Hosea has pleaded facts sufficient to state such a claim are discussed below.

jurisdiction exists over the negligence claims, supplemental jurisdiction is appropriately exercised over all other claims asserted by Hosea.  For that reason, I recommend denial of Waterfront's motion to dismiss.

### C.  C&B's Motion To Dismiss

C&B's motion argues that Hosea has failed to state any claim against C&B, based upon the fact that the real dispute involves the contract between Hosea and Waterfront to which C&B was not privy. In contrast to the recommended denial of Waterfront's motion, I recommend that C&B's motion to dismiss be granted.

### 1.  No Claim Stated for Tortious Interference by C&B

Hosea's complaint alleges that C&B is liable for "tortious interference" with the portion of the Hosea-Waterfront contract that permitted Hosea "access" to the Barge to remove personal property. Hosea's amended complaint clarifies that its claim against C&B is limited to funds that Hosea lost based upon the Barge sinking prior to Hosea's removal of personal property, and that Hosea is not seeking to recover from C&B for damages from the loss of the sale/demolition value of the Barge. (Doc. 15 at 1).

To understand the basis for Hosea's damage claims against C&B, the undersigned turns to the contract provision at issue.  The contract describes three categories of personal property that Hosea was to remove from the Barge.  First, "[o]n July 8th, 2014, [Hosea]…will remove and pack all of the previously tagged items located on the Barge identified by Jeff Ruby during the parties[']s prior walkthrough, including, without limitation, the removal of all items bearing The Waterfront name or marks…." (Doc. 15 at 11).  Hosea was to provide "materials needed to safely pack" the designated

items, described as "including…identified artwork and other items, and transport… to the warehouse owned by Jeff Ruby Culinary Entertainment, Inc."  (*Id.*)

The contract next directs Hosea to "[a]dditionally…pack, remove and transport all chandeliers, mirrors and other miscellaneous items already identified to be retained by Waterfront," which items were to be delivered to the same warehouse by a date described as the "Removal Completion Date."  (*Id.*)   The "Removal Completion Date" is later "estimated to be August 16, 2014."  (*Id.* at 12).  There is no dispute that Hosea did not complete removal of this second category of personal property prior to the date that the Barge sank.   Because a contractual payment of $32,500 was conditioned "upon the Removal Completion Date," (*id.* at 11), Hosea did not receive that payment.[9]

In a separate paragraph that follows the directives for Hosea to remove and transport the first two categories of personal property to a warehouse on Waterfront's behalf, the contract describes a third category of personal property that Hosea "will, at [Hosea's] expense, remove" from the Barge.   The language of that provision states that Hosea will

> remove all remaining items from Waterfront that are not Ruby Retained Items.  All of these items are the responsibility of and will become property of [Hosea], which will perform all legal requirements related to such removal and the sale, destruction or other disposition of these items.  All debris removal and related compliance will be at the expense of [Hosea].

(Doc. 15 at 11).  Because Hosea did not complete the removal of the second category of personal property, it also failed to remove this third category of "remaining" property. In its amended complaint, Hosea alleges that as a result, it was "prevented from taking

---

[9]Hosea received an initial payment of $27,500.  The sum of $32,500 is comprised of a second payment of $27,500 plus an additional $5,000 in trade credit usable at any Jeff Ruby Culinary Entertainment restaurant.

possession of … Waterfront kitchen equipment, valued at $80,000 and two 16' Box trucks of large, high quality tables and chairs, valued at $5,000 (totaling $85,000)."

In order for Hosea to physically remove all three categories of personal property, as well as to show the Barge to prospective purchasers, the contract stated that beginning on July 8, 2014, "Waterfront will provide access" to Hosea. (Doc. 15 at 11, 12). Hosea's claim of "tortious interference" alleges that with "actual knowledge of the terms of the Hosea - Waterfront Agreement" C&B "interfered" with Hosea's performance when C&B "intentionally and purposefully denied [Hosea] access to the…Barge, thereby preventing it from performing and completing the removal of personal property." (Doc. 15 at ¶43).

Assuming that Kentucky law applies, C&B persuasively argues that the facts alleged fail to state any claim for intentional or "tortious" interference with the Hosea-Waterfront contract.[10] To prove intentional interference with contractual relations, Hosea must show: (1) the existence of a contract; (2) C&B's knowledge of the contract; (3) that C&B intended to cause its breach; (4) that C&B's conduct caused the breach; (5) that the breach resulted in damages to Hosea; and (6) that C&B had no privilege or

---

[10]In its response, Hosea does not directly dispute that Kentucky law would apply over its state law claims, despite frequently citing Ohio law. Waterfront also relies primarily on Ohio law in its motion for summary judgment. Because no party has identified any material distinction between Ohio and Kentucky law concerning the issues presented, and because the parties have failed to fully brief what is often a complex issue, the undersigned declines to make a definitive ruling on choice of law. *But see generally Donais v. Green Turtle Bay, Inc.*, 2012 WL 399160 (W.D. Ky. Feb. 7, 2012)(noting that admiralty choice of law rules apply in tort cases based upon admiralty jurisdiction)*; Barge v. Jaber*, 831 F. Supp. 593 (S.D. Ohio 1993) (noting that the place where a contract is made and the place where it is performed is often significant); *Pivnick v. White, Getgey & Meyer Co., LPA*, 2007 WL 2236609, 2007 U.S. Dist. LEXIS 55423 at * 11 (S.D. Ohio July 31, 2007)(Barrett, J., applying Kentucky law after recognizing that "the applicable law will usually be the local law of the state where the injury occurred").

justification to excuse its conduct. *Griffin v. Jones*, 170 F. Supp.3d 956, 967 (W.D. Ky. 2016).

Here, Hosea's allegations appear to be inconsistent with the element that C&B "caused" the breach.[11] To the contrary, the facts alleged by Hosea are that Waterfront <u>first</u> breached the contract, and that Waterfront subsequently enlisted C&B's aid in continuing an existing breach of the provision requiring Waterfront to allow Hosea "access" to the Barge. (*See* Doc. 15 at ¶¶ 32-33, 37-38). Thus, the amended complaint asserts that was it was <u>Waterfront and not C&B</u> who intentionally "caused" the breach. "Waterfront …instructed Defendant C&B Marine to deny [Hosea] access, thereby preventing removal of the personal property…." (Doc. 15 at ¶¶33, 48).

C&B asserts that based on Hosea's allegation that Waterfront first denied Hosea "access" to the Barge - before C&B allegedly complied with Waterfront's directive – C&B cannot be held liable for intentional interference with the Hosea-Waterfront contract. I agree. *See Grant v. Dean Witter Reynolds*, 952 F. Supp. 512, 515 (E.D. Mich. 1996) (finding a tortious interference claim to be without merit when "defendants' actions could not have instigated" a contractual breach that "had already taken place").

Hosea does not dispute that if the referenced allegations stood alone, C&B's argument would be persuasive.[12] However, Hosea points to additional allegations that "[w]ith actual knowledge of the terms of the Hosea-Waterfront Agreement, Defendant C&B Marine interfered with the Hosea Plaintiffs' performance without their consent or

---

[11]To the extent that Hosea believes that Ohio law rather than Kentucky law applies, Hosea has cited to no Ohio authority that would not similarly require a plaintiff to prove that the defendant caused the breach.
[12]C&B first argues that because Hosea's response in opposition was untimely filed (by one day), this Court should not consider it. However, the undersigned exercises judicial discretion to fully consider the response as if timely filed.

other privilege," and that C&B "intentionally and purposefully denied Hosea…access to the Waterfront Barge, thereby preventing it from …completing the removal of personal property" under the contract. (Doc. 15 at ¶¶42, 43). Hosea argues that under notice pleading standards, it may plead even seemingly inconsistent facts and theories.[13] Based on the referenced allegations, Hosea contends that a "genuine issue of material fact" exists concerning whether or not Waterfront first breached the contract (which would be inconsistent with C&B's liability) or whether C&B directly caused the breach.

In its reply memorandum, C&B points out that even under this "alternate" theory, Hosea has failed to connect the dots. Hosea never alleges that Waterfront breached the contract *after* C&B interfered with the contract, but instead alleges *only* that Waterfront *first* breached the contract, beginning as early as July 8, 2014. Nowhere does Hosea actually allege that C&B intended to cause a breach of the contract. Instead, Hosea's amended complaint asserts only that C&B was aware that the contract required Waterfront to allow Hosea access, and "interfered with" <u>Hosea's performance</u> (removal of personal property from the Barge). But Hosea does not allege or argue that C&B intended to cause either Hosea or Waterfront to breach the contract. Thus, the amended complaint fails to state a claim against C&B for intentional interference with the Hosea-Waterfront contract, because Hosea does not allege that C&B's actions caused Waterfront to breach the contract, as opposed to Waterfront initiating the breach and instructing C&B to deny Hosea access.

---

[13]Of course, Rule 11, Fed. R. Civ. P. provides some additional limitations on the ability to plead inconsistent facts and legal theories.

## 2.  No Claim Stated for Conversion Against C&B

C&B's argument that Hosea has failed to state a claim for conversion is equally persuasive.   Under Kentucky law, a claim of conversion consists of the following elements:

> (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff[']s rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiffs possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiffs loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

*James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Management*, LLC, 941 F.Supp.2d 807, 826 (E.D. Ky. 2013) (quoting *Ky. Ass'n of County's All Lines Fund Trust v. McClendon*, 157 S.W. 3d 626, 632 n. 12 (Ky. 2005) (additional citations omitted)). "[T]he property converted must be property which the plaintiff has the exclusive right to control."  *Id.*, 941 F. Supp.2d at 826.

C&B first points out that, under the contract, Hosea had no ownership interest in the Barge.   C&B further argues that Hosea had no property interest in any of the personal property on the Barge "unless and until the items were removed."  (Doc. 17 at 7).

In its memorandum in opposition to C&B's motion to dismiss, Hosea argues that it has sufficiently alleged an ownership interest in the personal property located on the Barge, because the amended complaint contains multiple allegations that either directly or indirectly state that C&B and Waterfront denied Hosea access to "property that

belonged not only to Ruby/Waterfront <u>but also to the Hosea Plaintiffs</u>." (Doc. 15 at ¶33, emphasis added); *see also id.*, at ¶¶35, 47, 48, 49).

The difficulty is that the allegations of Hosea's ownership interest are contradicted by the express language of the Hosea-Waterfront contract, which is incorporated into Hosea's pleading as an exhibit attached to the amended complaint. When allegations in a complaint contradict an attached contract that forms the basis for the claims, the provisions of the contract control. *Apex Energy Grp., LLC v. Apex Energy Sols. Of Cincinnati, LLC*, 2013 U.S. Dist. LEXIS 14758 at *14, 2013 WL 394464 (S.D. Ohio Jan. 31, 2013) (Barrett, J.) (declining to accept allegations that "directly contradict the unambiguous language" of a contract attached to the complaint); *accord Ingram v. State Prop. & Bldg. Commission*, 309 S.W.2d 169, 172 (Ky. App. 1957)("[W]hen a cause of action is founded upon a written contract which constitutes a portion of the pleading and the contract contradicts the allegations of the pleading, the provisions of the contract control").

As previously stated, the contract provided that title to the Barge was to remain with Waterfront. Contrary to Hosea's assertion of an ownership interest in the personal property that was physically located on the Barge, the language of the contract clarifies that ownership interest in that property would not inure to Hosea until after the removal of the first two categories of property destined for the warehouse. The contract sets forth its objectives in chronological fashion. The terms first direct Hosea to remove "previously tagged items" on July 8, 2014, with a second category of "chandeliers, mirrors and other miscellaneous items" to be removed on a "Removal Completion

19

Date." (Doc. 15 at 11-12).  The contractual language states that only <u>after</u> that condition will Hosea acquire a property interest in "remaining items."  In addition to the chronological format of the stated provisions, the use of past and future tense is contextually clear.  Thus, the contract specifies that only "<u>remaining</u> items" from the Barge "<u>will become</u> property of [Hosea], which will perform all legal requirements related to such removal and the sale, destruction or other disposition of these items…."  (Doc. 15 at 11, emphasis added).

Hosea fails to state a claim for conversion because such a claim "cannot be brought where 'the property right alleged to have been converted arises entirely from the contractual rights'" of the plaintiff.  *Beacon Enter. Sols. Grp. v. MDT Labor, LLC*, 2013 U.S. Dist. LEXIS 10573, at * 13, 2013 WL 253134 (W.D. Ky. Jan. 23, 2013) (additional citation omitted). Thus, to the extent that Hosea alleges damages based upon the loss of personal property that it had a contractual right to remove from the Barge, its remedy lies in its breach of contract claim against Waterfront, not through a tort claim against C&B.  *See id.*, at *13.

### 3.  No Claim for Negligence Against C&B

In order to state a negligence care against C&B, Hosea must show that C&B owed Hosea a duty of care.  *See Penco, Inc. v. Detrex Chem. Indus., Inc.*, 672 S.W.2d 948, 951 (Ky. App. 1984).  Hosea's explanation for the foundation of its negligence claim is succinct, if unilluminating:  "It is axiomatic that after [C&B] refused to allow Plaintiffs Hosea onto the Waterfront Barge to obtain possession of the personal property

that they owned, [C&B] **voluntarily assumed a duty of due care <u>as to Plaintiffs Hosea</u>**." (Doc. 23 at 9, emphasis original).

For the reasons stated above, the undersigned does not agree that such a duty of care is "axiomatic" or that C&B "voluntarily assumed" such a duty.  To the contrary, Hosea's claim of an ownership interest in personal property that remained on the Barge at the time of its sinking must give way to express language in the Hosea-Waterfront contract that refutes any such ownership interest.  Because Hosea had no property interest in the items that remained on the Barge, C&B owed Hosea no duty of care that could support a negligence claim.  Nor can Hosea rely upon any contractual rights in the Hosea-Waterfront contract to assert a negligence claim against C&B, since C&B was not a party to that contract. *See generally Penco, Inc.*, 672 S.W.2d at 951; *Derby Road Bldg Co. v. Com., Dept. of Highways*, 317 S.W.2d 891, 895 (Ky. 1958) ("ordinarily only those who are parties are liable for the breach of a contract, and the parties cannot impose any liability upon a stranger to the contract under its terms."), overruled on other grounds by *Foley Constr. Co. v. Ward*, 375 S.W.2d 392 (Ky. 1963).

In the alternative to C&B owing the alleged duty of care, Hosea briefly argues that "the legal relationship between [Hosea] and [C&B] <u>could have been</u> one of a 'bailment' or 'constructive bailment.'" (Doc. 23 at 9, emphasis added).  The sole reference to bailment occurs in ¶55 of the amended complaint, wherein Hosea alleges: "As a proximate result of [Waterfront's and C&B's] negligence, and/or, in the alternative, breach of bailment/constructive bailment, the Hosea Plaintiffs have been damaged in an amount to be proven at trial." (Doc. 15 at ¶55).  However, any bailment claim also fails

as a matter of law based upon the lack of Hosea's ownership interest.  Moreover, there are no factual allegations pleaded in the amended complaint to support a "bailment."

### 4.  No separate claim for Malice Against C&B

Last, despite Hosea's inclusion of a separate caption of "Count VI" for a claim of malice, "Kentucky does not recognize an independent claim for malice." *IB Agric. Inc. v. Monty's Plant Food Co.*, 2014 U.S. Dist. Lexis 136833 at *25, 2014 WL 4851774 (W.D. Ky. Sept. 29, 2014).  Likewise, any "claims" for punitive damages and attorney's fees stated under "Count VI" are not independent causes of action, but instead are mere remedies.  *See e.g., Vandon Boasch v. Bayer Healthcare Pharms., Inc.*, 13 F. Supp.3d 730, 751 (W.D. Ky. 2014). Because Hosea has not otherwise stated any claim against C&B, and there is no independent cause of action for malice, punitive damages, or attorney's fees, Hosea's "Count VI" also must be dismissed as to C&B.

### III.  Analysis of Waterfront's Motion for Summary Judgment

On April 19, 2017, Waterfront filed an alternative motion for summary judgment.[14] Because little if any discovery has been conducted to date in the Hosea-Waterfront Contract case, Waterfront's motion relies in part on discovery conducted in the Insurance Policy Case, as well as on the express language of the Hosea-Waterfront contract.

### A.  Summary Judgment Standard of Review

In considering a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the

---

[14]Waterfront 's motion states that it is not withdrawing its motion to dismiss and "respectfully requests that the Court still consider that motion."  (Doc. 40 at 5).

nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks and additional citations omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c), internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the nonmoving party, however, does not mean that the court must find a factual dispute where record evidence contradicts wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S. Ct. 1348 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S .Ct. 2505 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added).

23

The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251–52.

Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, 106 S. Ct. at 1356, inferences are not to be drawn out of thin air. Rather, once the moving party has demonstrated the absence of evidence to support the nonmoving party's case, the nonmoving party must " 'go beyond the pleadings' " to show that " 'there is a genuine issue for trial.' " *Horton v. Potter,* 369 F.3d 906, 909 (6th Cir.2004) (*quoting Celotex,* 477 U.S. at 324). To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita,* 475 U.S. at 587 (citation omitted).

### B.  Grounds Asserted in Waterfront's Motion

As should be clear from the above discussion, Hosea filed suit in part to ensure that if Waterfront recovers insurance proceeds for the loss of the Barge,[15] then Waterfront will pay to Hosea an amount that compensates Hosea for its services, as if those services had been fully performed under the Hosea-Waterfront Contract.  In its motion for summary judgment, Waterfront argues that because there is no dispute that Hosea did not complete those services, Hosea is barred from any further payment as a matter of law.  Waterfront additionally argues in its reply memorandum that it is seeking judgment either under Rule 56 or judgment on the pleadings under Rule 12(c), Fed. R.

---

[15]Hosea makes no direct claim against U.S. Fire.

Civ. P., as to Hosea's claims for constructive trust, conversion, and negligence, because equitable remedies are unavailable for an alleged breach of contract.

For the reasons that follow, I recommend the entry of judgment in Waterfront's favor on all but Hosea's breach of contract claim.

### 1. The Breach of Contract Claim

Not surprisingly, the Hosea-Waterfront contract is silent on the parties' duties, rights, or obligations if the Barge were to sink or otherwise be destroyed prior to completion of the duties specified under the contract. The contract contained only a brief reference to insurance, specifying that Waterfront was to keep its existing U.S. Fire policy through October 2014, but that if insurance were required after that date, the costs of a policy would be borne equally by Hosea and Waterfront. While the contract contained no express provisions that anticipated the August 5, 2013 calamity that befell the Barge, the contract did spell out Hosea's duties to remove certain personal property from the Barge and to subsequently sell the vessel to a purchaser or for scrap value. Given the express requirement that Waterfront allow Hosea "access" to its Barge to fulfill those duties, it is implicit that access was intended to be to a vessel that – if not seaworthy – was at least not in imminent danger of sinking during the term of the contract.

In its breach of contract claim against Waterfront, Hosea alleges that Waterfront "obstructed…access" to the Barge, and instructed C&B to deny Hosea access, thereby preventing removal of personal property. (Doc. 15 at ¶33). Hosea further alleges that Waterfront "obstructed [Hosea] from access" and prevented Hosea from moving the

Barge to Warsaw, Kentucky "to facilitate…further performance" including the sale of the Barge. (Doc. 15 at ¶38). Further, Hosea accuses Waterfront of employing C&B "which negligently transported the Waterfront Barge thereby causing it to sink." (*Id*. at ¶39). As the undersigned understands Hosea's theory, it is alleging that Waterfront committed a material breach of the "access" provision either by failing to provide a seaworthy vessel capable of being accessed, and/or by otherwise preventing Hosea's physical access to the Barge before it sank.

Based on the alleged breach, Hosea seeks expectation damages in an amount that would compensate Hosea as if it had fully completed its obligations, through the sale or demolition of the Barge. *See generally University of Louisville v. RAM Engineering & Const., Inc.*, 199 S.W.3d 746, 748 (Ky. App.2005) (describing damages for breach of a contract as "that sum which would put an injured party into the same position it would have been in had the contract been performed."); *In re Highland Superstores, Inc.*, 154 F.3d 573, 580 (6th Cir. 1998). Thus, Hosea seeks damages that include: (1) the sum of $32,500 due upon completion of delivery of personal property to a designated warehouse; (2) a sum to compensate Hosea for property rights to property "remaining" after delivery of the warehouse property (alleged to be valued at $85,000); and (3) a portion of the net proceeds that would have resulted from either a sale of the Barge to an approved purchaser, or from the demolition and sale of the Barge for scrap value.

Waterfront seeks summary judgment on this claim, arguing first that Hosea's allegation that it "partially performed the removal of personal property" from the Barge is

incompatible with its assertion that Waterfront committed a material breach by denying

Hosea "access." (*See* Doc. 15 at ¶ 32). The undersigned does not agree. The fact that

Waterfront provided some access to Hosea at the outset of the contract has no bearing

on whether Waterfront subsequently denied access and breached the contract.

Next, Waterfront points to deposition testimony from David Hosea that physical

removal of the larger items of property could only be completed from the "access doors"

on the vessel, which were positioned on the river side of the Barge at the start of the

term of the contract.[16] The evidence supports Waterfront's position that Hosea needed

the Barge to be "flipped around" to complete the property removal. (Doc. 32-2).

Waterfront argues that Hosea has produced no evidence that Waterfront refused to

have the Barge moved to accommodate that need. To the contrary, Waterfront asserts

that the Barge sank <u>when</u> it was moved by C&B to provide Hosea with the access it

required under the contract. (*See* Doc. 40-1 at 6, deposition testimony of David Hosea

that Jeff Ruby was pressing Hosea to complete property removal, and that Hosea was

in direct contact with C&B to reposition Barge).

Waterfront insists that there is "no evidence anyone, especially Waterfront,

expected the …Barge to sink on August 5, 2014." (Doc. 32 at 7). Waterfront relies on

the legal doctrine of "impossibility of performance" (the Barge sinking) to excuse further

performance under the Hosea-Waterfront contract by either party. In any event,

because Hosea did not actually fulfill the express conditions required for payment under

the contract (removal of all designated warehouse property by the Removal Completion

---

[16]An August 29, 2014 email attached to Todd Hosea's affidavit confirms that "the larger pieces of equipment [] needed to be removed with a crane. There was absolutely no way to hand carry them off the boat." (Doc. 38-1).

Date, removal of "remaining" property, and sale of the Barge, Waterfront argues that it owes nothing more under the contract.

A party who raises the impossibility defense bears the burden of proving it.  *State ex rel. Dewine v. Washington C.H.*, 2014-Ohio-3557 at ¶29, 18 N.E.3 448  (Ohio App. 2014).  In support of its assertion that the sinking was not foreseeable, Waterfront points to deposition testimony in which David Hosea attested that, to Hosea's knowledge, there had been pumps running on the Barge but that C&B removed them.  (Doc 40-2, Hosea Deposition at 37:15-38:3).  In addition, a marine surveyor testified that, during his visit on an unspecified date in June 2014, the Barge was not in "imminent peril" of sinking.  (Doc. 40-3, Weeter Deposition at 142:5-17).  Based upon the cited testimony, Waterfront asserts that it provided access by taking "all necessary steps to keep the Waterfront Barge afloat and seaworthy."  (Doc. 40 at 4).

Hosea strongly contests that assertion, as well as the legal viability of Waterfront's "impossibility defense."  To demonstrate that a contractual duty is "impossible" to perform, the impossibility must not be attributable to the party asserting the defense, and the party asserting impossibility must show that the difficulties could not have been foreseen.  *See In re Guardianship of Hards,* 2009 WL 580806, 2009-Ohio-1002 ¶ 36; *see also Stuckey v. Online Resources Corp.*, 909 F. Supp.2d 912, 932 (S.D. Ohio 2012); *accord Lovejoy v. Reed*, 302 Ky. 153, 157, 193 S.W.2d 1013 (Ky. App. 1946).   In this case, Hosea argues that the sinking of the Barge was directly attributable to Waterfront.[17]  Hosea further argues that Waterfront, as the party that

---

[17]Technically, Hosea pleads that the negligence that sunk the Barge is also be attributed to C&B.

28

bears the burden of proof, has not shown that the Barge sank due to unforeseeable circumstances.  At a minimum, Hosea requests that a decision on Waterfront's pending motion for summary judgment be deferred to permit Hosea to conduct additional discovery, under Rule 56(d), to locate and produce evidence that Waterfront knew or should have known of the likelihood the Barge would sink, or is otherwise liable for the sinking of the Barge.

The undersigned agrees that Waterfront has failed to show it is entitled to judgment on Hosea's breach of contract claim at this time.  The reason that the Barge sank remains a highly disputed issue of material fact, on which full discovery has yet to be completed.  I also conclude that genuine issues of material fact remain concerning whether Waterfront, at any time after July 8, denied Hosea "access" to the Barge to fulfill its contractual duties.  In so ruling, however, the undersigned rejects Hosea's contention that it has produced evidence that Waterfront or its agents refused Hosea access to the Barge.  The evidence to which Hosea refers concerns events in June 2014, prior to the execution of the contract at issue.  The July 3, 2014 Hosea-Waterfront Contract clearly superseded any prior understanding, and provided Hosea a right of "access to the Barge" that explicitly began on July 8, 2014.  (See Doc. 15 at 12, "*This letter contains the entire agreement of the parties on this subject matter herein.*  This letter *amends* and restates in all respects the June 10, 2014 letter from David S. Hosea to Jeff Ruby, which letter shall be of no further force or effect.") (emphasis added). Based on the express terms of the July 3, 2014 contract, any prior alleged denial of access in June 2014 is not proof that Waterfront was in breach of the later contract.

In sum, material issues of fact remain concerning whether Waterfront's conduct denied Hosea access to a Barge that would remain above water for the duration of the contract, or whether Waterfront otherwise impeded (or directed C&B to deny) access to the Barge after July 8, 2014. To the extent that Waterfront's own conduct prevented Hosea from fulfilling the conditions precedent to Hosea's entitlement to full payment under the contract, Waterfront cannot simply state that nothing more is owed because Hosea did not perform. The undersigned therefore recommends denial of Waterfront's motion for summary judgment on Hosea's breach of contract claim, without prejudice to renew at the completion of discovery.

While I recommend denial of judgment on the breach of contract claim for the reasons explained above, I recommend granting Waterfront's motion for judgment on all other claims asserted by Hosea. Unlike the breach of contract claim on which material issues of fact remain, no amount of discovery could produce facts to support Hosea's claims for constructive trust, conversion, and negligence, which fail as a matter of law.

### b. Constructive Trust Claim

"A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Bechtol v. Cobb*, 1996 WL 464155 at *4 (Ohio App. 6th Dist. Aug. 16, 1996)(citations omitted); *accord Terrill v. State of Terrill*, 217 S.W.3d 858, 860 (Ky. App. 2006). Waterfront is entitled to judgment as a matter of law on Hosea's constructive trust claim, based on the general principle that "where damages are available for breach of contract or in tort, the [plaintiff] cannot also invoke

the equitable remedy for unjust enrichment," as Hosea attempts to do in this case. *Delahunt v. Cytodyne Technologies*, 241 F. Supp.2d 827, 841 (S.D. Ohio 2003)(quoting *Banks v. Nationwide Mut. Fire Ins. Co.*, No. 99AP–1413, 2000 WL–1742064, at *5 (Ohio Ct.App. Nov. 28, 2000). Only "if no remedy is available in contract or tort" will an equitable remedy in unjust enrichment be permitted to prevent injustice. *Saraf v. Maronda Homes, Inc. of Ohio*, 2002 WL 31750249, 2002-Ohio-6741 at ¶12 (Ohio App. 2002). Because a valid contract exists that defines the rights between the parties in this case,[18] Hosea cannot maintain its claim for constructive trust. *Accord Beatley v. Beatley*, 160 Ohio App.3d 600, 828 N.E.2d 180 (Ohio App. 2005); *see also Kool, Mann, Coffey & Co. v. Castellini Co.*, 1995 WL 453049, at *8 (Ohio App. 1995)(denying theory of unjust enrichment, for damages in an amount equal to insurance proceeds retained for destroyed property, holding that "a relationship defined by an express agreement may not be redefined under a theory of quasi-contract and unjust enrichment in the absence of fraud, illegality or bad faith.")

### c. Conversion Claim

Waterfront also is entitled to judgment on Hosea's conversion claim. In recommending the grant of judgment on this claim, the undersigned does not rely upon Waterfront's citation to limited evidence that Hosea had "access" to the Barge. Instead, I conclude that judgment is appropriate for the same reasons that the conversion claim against C&B should be denied. No conversion claim can be stated as a matter of law, because based upon the express terms of the contract, Hosea had no ownership

---

[18]The undersigned expresses no view on whether Waterfront's contractual duty to maintain insurance on the Barge should be read as conveying any contractual benefit to Hosea to share in any insurance proceeds.

interest in either the Barge itself or the personal property that remained aboard at the time the vessel sank.  *See also Beacon Enter. Sols. Grp. v. MDT Labor, LLC*, 2013 U.S. Dist. LEXIS 10573, at *13 (holding that a conversion claim cannot be based upon property rights that arise entirely from contractual rights).

### d.  Negligence Claim

Last, Waterfront is entitled to judgment as a matter of law on Hosea's negligence claim, because Hosea can prove no actual loss or damages from Waterfront's negligence, as opposed to its alleged breach of contract.

Hosea pleads negligence against both Waterfront and C&B.  Thus, Hosea alleges that both Defendants "failed to use due care in the maintenance, repair, preparation and movement of the…Barge," and that both Defendants "failed to properly and fully repair the damage it suffered when Barge AEP 3015 collided with it while moored, thereby rendering it unseaworthy."[19]  (Doc. 15 at ¶¶ 50, 51).  Additionally, Hosea alleges that both Defendants were negligent when "persons in charge of and in control of the … Barge…moved the work boat/ work barge that was providing power to the Waterfront Barge, including but not limited to its bilge pump, thereby causing it to take on water and rending it unseaworthy."  (Doc. 15 at ¶52).  Last, Hosea alleges that "persons in charge" failed to maintain a proper lookout, causing the Barge to collide with a wreck" on an unspecified time/date, and "failed to timely react" to save the Barge.  (Doc. 15 at ¶¶53-54).  Hosea concludes that as a result of the alleged negligence, "and/or, in the alternative, breach of bailment/constructive bailment" Hosea has suffered

---

[19]The referenced collision occurred in June 2014, prior to the execution of the Hosea-Waterfront contract.

damages in the amount it would have obtained if it had been able to fulfill its duties under the contract.

"A fundamental element of any negligence claim is actual loss or damage to the claimant." *M/V Oslo v. U.S.*, 709 F. Supp. 1386, 1386-87 (E.D. Va. 1988)(additional citation omitted). In Kentucky, the economic loss rule precludes the recovery of tort damages based on a relationship that was created by contract. *See generally Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729 (Ky. 2011). Though most often cited in products liability litigation, the principle is also applied in negligence. *See MedChoice Financial, LLC v. ADS Alliance Data Systems, Inc..*, 857 F. Supp.2d 665, 671 (S.D. Ohio 2012); *see also East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986) (adopting economic loss rule in admiralty law)..

As discussed above, C&B is entitled to dismissal of Hosea's negligence claim because C&B owed no direct duty of care to Hosea to preserve property in which Hosea had acquired no ownership rights. For similar reasons, Waterfront is entitled to judgment as a matter of law on Hosea's negligence claim. Because Hosea can claim no ownership interest in either the personal property aboard the Barge or the Barge itself at the time of any of Waterfront's allegedly negligent actions, Hosea has no claim to any damages in tort. Hosea cannot recover in tort for damages that arise solely from the alleged breach of contract.

### IIII. Conclusion and Recommendations

For the reasons discussed above, **IT IS RECOMMENDED THAT** Waterfront's motion to dismiss for lack of subject matter jurisdiction (Doc. 18) be **DENIED**; that

C&B's motion to dismiss for failure to state a claim (Doc. 17) be **GRANTED**; and that Waterfront's motion for summary judgment (Doc. 32) be **GRANTED** in part and **DENIED** in part, consistent with this Report and Recommendation.

_s/ Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

HOSEA PROJECT MOVERS, LLC, et al.,          Lead Case No. 1:15-cv-799

             Plaintiffs,          Barrett, J.
                                              Bowman, M.J.

      v.

WATERFRONT ASSOCIATES, INC.,  et al.,

             Defendants.

*****************************

UNITED STATES FIRE INSURANCE CO.,          Case No. 1:15-cv-46

             Plaintiff/Crossclaim Plaintiff
      v.

WATERFRONT ASSOCIATES, INC.,

             Defendant/Third-Party Plaintiff,
       v.

C&B MARINE, LLC,

             Third-Party Defendant/Crossclaim Defendant

**NOTICE**

     Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written

objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS**

of the filing date of this R&R. That period may be extended further by the Court on

timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).