# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

HOSEA PROJECT MOVERS, LLC, et al.,          Lead Case No. 1:15-cv-799

          Plaintiffs,          Barrett, J.
                                          Bowman, M.J.

     v.

WATERFRONT ASSOCIATES, INC., et al.,

          Defendants.

## REPORT AND RECOMMENDATION

The above captioned case previously was consolidated with a second related case, *U.S. Fire Insurance Co. v. Waterfront Associates, Inc.*, Case No. 1:15-cv-46 (the "Insurance Policy case").  The Insurance Policy case has since been dismissed,[1] but Hosea Project Movers, LLC and Hosea Demolition Movers, LLC ("Hosea") and Waterfront Associates, Inc. ("Waterfront") have continued to pursue their distinct claims (the "Hosea-Waterfront case").

Currently pending before the undersigned for initial review and a report and recommendation ("R&R") is Waterfront's motion to dismiss, or in the alternative, for

---

[1]The Insurance Policy case was initiated by United States Fire Insurance Company ("U.S. Fire") against Waterfront Associates, Inc.   After the vessel on which Waterfront had obtained a policy sank, U.S. Fire advanced $500,000.00 of policy proceeds on Waterfront's behalf to C&B Marine, LLC ("C&B"), to remove and dispose of the Barge under a reservation of rights as to coverage issues.  U.S. Fire then filed suit against Waterfront seeking judgment to declare its insurance policy to be void *ab initio*, or in the alternative, to declare that there is no coverage and ordering Waterfront to repay U.S. Fire $500,000.00 plus interest, costs, and attorney's fees.  Waterfront filed a Counterclaim against U.S. Fire for breach of its contract of insurance and bad faith, as well as a third party complaint against C&B Marine, LLC that alleged that C&B's actions caused the Barge to sink.  U.S. Fire followed suit with a cross-claim against C&B.  U.S. Fire, Waterfront, and C&B settled all claims on March 19, 2018, leaving only the parties and claims that remain in the above-captioned Case No. 15-cv-799.  (See Doc. 86).

summary judgment. Hosea has filed a response in opposition to Waterfront's motion, to which Waterfront has filed a reply. For the reasons that follow, I now recommend that Waterfront's motion be GRANTED, and that the remainder of this case be dismissed for lack of subject matter jurisdiction. Only in the alternative, if this Court were to retain jurisdiction, do I recommend that Waterfront's motion for summary judgment be GRANTED.

## I.    Background

The claims filed as the now-dismissed Insurance Policy case and this case arose out of the same event – the sinking of a well-known floating restaurant called the Waterfront (hereinafter "the Barge"). Restaurant operations on the Barge ceased in 2011, when the Barge first broke away from its moorings in Covington, Kentucky. On February 6, 2014, the Barge again broke away from its moorings. In June 2014, Waterfront alleged that the Barge was struck by another vessel, identified as Barge AEP 2015 (Complaint in Case No. 1:15-cv-46, Doc. 1 at ¶27; Third Party Complaint in Case No. 1:15-cv-46, Doc. 35 at ¶17). On or about August 5, 2014, for reasons that remain undetermined,[2] the Barge sank for good.

Unlike the claims presented by the parties to the Insurance Policy case, the lone claim that remains in this case is based upon a contract for services that Hosea entered into with Waterfront on July 3, 2014. That contract required Hosea to remove personal property from the Barge, to use its "best efforts" to sell the Barge on Waterfront's behalf,

---

[2]The determination of the cause of the sinking was among the issues being litigated in the Insurance Policy case prior to the resolution of that case through settlement. Waterfront attributes the sinking either to the June 2014 collision with another barge, or alternatively, to the conduct of C&B.

and, if the Barge could not be sold, to demolish the Barge. Unfortunately, the Barge sank only a month after the execution of that contract. At the time the Barge sank, Hosea had not removed all designated personal property. The sinking of the Barge simultaneously sank Hosea's prospects for selling the Barge to an approved purchaser or for scrap value. Additionally, Waterfront refused to make a final payment under the contract, since Hosea had not completed removal of the designated property.

In December 2015, Hosea initiated the instant suit against both Waterfront and another entity, C&B Marine, LLC ("C&B"), seeking to recover the revenue that slipped away with the Barge under the Ohio River. Hosea later filed an amended complaint asserting six separate counts and alleging jurisdiction under admiralty law.

In lieu of filing an Answer, both Waterfront and C&B moved to dismiss the amended complaint. Waterfront also moved for summary judgment. More than a year ago, on August 2, 2017, the Court granted C&B's motion to dismiss all claims filed against C&B for failure to state a claim. (Docs. 43 (R&R); Doc. 45 (Order of adoption)). At the same time, the Court partially granted Waterfront's motion for summary judgment on multiple claims, leaving intact only a single state law breach of contract claim filed by Hosea against Waterfront. (Doc. 43 at 25). As to that sole remaining claim, Waterfront has now filed a second motion to dismiss or, in the alternative, for summary judgment.[3]

Significantly, this Court denied Waterfront's prior motion to dismiss Hosea's amended complaint for lack of federal question jurisdiction. Because the Court's prior

---

[3]Both Defendants had moved to dismiss the original complaint, but those motions were mooted by the filing of Hosea's amended complaint. Thus, the instant motion is Waterfront's third motion to dismiss for lack of jurisdiction, but only the second such motion as to Hosea's amended complaint.

analysis bears directly on the issues at hand, portions of the July 14, 2017 R&R have been fully restated herein. At the same time, Waterfront's latest motion to dismiss raises an entirely new argument as to why this Court lacks jurisdiction. For the reasons discussed below, the undersigned finds the new argument to be persuasive.

Given that this case has been pending for more than two and a half years and that discovery is complete, the late discovery of a fundamental lack of jurisdiction is lamentable. While this Court does not shrink from its own responsibility to independently review the existence of federal jurisdiction, *see Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010), federal courts necessarily rely upon the litigants to present jurisdictional issues early in the case. Here, Waterfront's prior motion to dismiss challenged admiralty jurisdiction over the breach of contract and negligence claims filed against it by Hosea. The undersigned carefully reviewed the specific jurisdictional challenges presented in Waterfront's prior motion, finding a lack of admiralty jurisdiction over the breach of contract claim, but finding jurisdiction was proper over the negligence claim. Despite granting summary judgment to Waterfront on that same negligence claim, this Court elected to retain supplemental jurisdiction over the remaining breach of contract claim given the anticipated judicial economies that led to the consolidation of the Insurance Policy case and the Hosea-Waterfront Contract case in the first place. Neither party filed any objections to the July 2017 R&R, which was adopted in full as the opinion of the Court on August 2, 2017. (Doc. 45). Thereafter, the case proceeded through the conclusion of discovery.

Waterfront's "new and improved" motion to dismiss challenges subject matter jurisdiction based upon a 2013 Supreme Court case that refined the definition of a vessel and limits federal maritime jurisdiction. Regrettably, Waterfront did not cite to that controlling case, or reference the argument in its prior motion.

Under Rules 12(g) and 12(h), a party waives any defense listed in Rule 12(b)(3)-(5) by omitting it from an earlier motion to dismiss. "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense…that was available to the party but omitted from its earlier motion." Rule 12(g)(2). Under Rule 12(h)(3), however, a motion challenging jurisdiction under Rule 12(b)(1) may be raised at any time and is not waived by a party's failure to include the grounds in a prior motion to dismiss. That exception exists because without jurisdiction, a federal court is without authority to proceed, and "must dismiss the action." *Id.* Therefore, this Court not only can, but <u>must</u> fully consider Waterfront's newfound challenge to subject matter jurisdiction, notwithstanding the fact that Waterfront could have (and should have) presented those same grounds in its prior motion to dismiss.

## II. Analysis

### A. Grounds Previously Considered Under Rule 12(b)(1)

Even though Waterfront presents a new legal argument, portions of the Court's analysis of Waterfront's first jurisdictional challenge are highly relevant to the analysis of its latest motion. Both Waterfront's prior motion to dismiss and its current motion fall under Rule 12(b)(1).

Generally, a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction falls into one of two categories: facial attacks and factual

attacks. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994) *cert. denied,* 513 U.S. 868, 115 S. Ct. 188, 130 L.Ed.2d 121 (1994); *see also Wenz v. Rossford Ohio Transp. Improvement Dist.,* 392 F.Supp.2d 931, 934 (N.D. Ohio 2005). A facial attack challenges the sufficiency of the pleading itself, and requires the Court to take all of the material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Ritchie,* 15 F.3d at 598 (citing *Scheuer v. Rhodes,* 416 U.S. 232, 235–37, 94 S. Ct. 1683, 40 L.Ed.2d 90 (1974)). In contrast, a factual attack challenges the factual existence of subject matter jurisdiction, *Ohio Hosp. Ass'n v. Shalala,* 978 F.Supp. 735, 739 (N.D. Ohio 1997), and requires a court to "weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Gentek Bldg. Prods. v. Sherwin–Williams Co.,* 491 F.3d 320, 330 (6th Cir. 2007)….

When assessing a factual attack on subject matter jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction, *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134 (6th Cir. 1996), and "no presumptive truthfulness applies to the factual allegations...." *Ritchie,* 15 F.3d at 598 (internal citations omitted). Instead, "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

*In re Steinle*, 835 F.Supp.2d 437, 440–41 (N.D. Ohio 2011) (dismissing two of six complaints filed in consolidated case for lack of subject matter jurisdiction under maritime law). *See also, generally, Heck v. Board of Trustees, Kenyon College*, 12 F. Supp.2d 728, 747 (S.D. Ohio 1998) (Courts look at each component action in a consolidated case independently to determine whether there is subject matter jurisdiction, since consolidated actions do not lose their separate identity upon consolidation).

In reviewing Waterfront's prior motion to dismiss for lack of jurisdiction, this Court noted:

Waterfront presents its jurisdictional challenge in simple terms: "[A] contract to remove materials from a barge and to broker the [B]arge for sale does not invoke admiralty jurisdiction merely because a barge is involved." (Doc. 18 at 1). In response, Hosea maintains that the Hosea-Waterfront contract constitutes a "maritime contract," over which this Court should exercise

admiralty jurisdiction under 28 U.S.C. §1333. Alternatively, Hosea argues
that admiralty jurisdiction attaches to its claims of negligence.

(Doc. 43 at 7-8, internal footnote omitted).

This Court agreed that the Hosea-Waterfront contract is not the type of "maritime

contract" that could support jurisdiction, based in part on the non-maritime nature of the

"primary objectives" of the contract.

> The language of the contract attached to the amended complaint confirms
> that the "primary objectives" of the contract were for Hosea to: (1) remove
> and transport personal property from the Barge; (2) broker the Barge for
> sale, and (3) demolish and sell the Barge for scrap value if no buyer could
> be found. None of these tasks are of an "essentially maritime nature," nor
> does the contract have anything to do with the repair or service of the Barge.
> In addition, the damages sought by Hosea do not arise under maritime law,
> but under state law, if at all.
>
> In its opposition to Waterfront's motion, Hosea asserts that the contract
> imposes upon Hosea an "obligation to repair and prepare the Waterfront
> Barge for resale." (Doc. 22 at 9). But the express terms of the contract
> include no such "obligation to repair." Instead, incidental to the intended
> sale of the vessel, the contract expressly grants Hosea only a limited and
> permissive "right to prepare the Barge for marketing and sale by improving
> its appearance, only so long as it receives the prior consent of
> Waterfront…to any such improvements." (Doc. 15 at 12, emphasis added).
>
> Hosea also claims that its "right and obligation to cause the Barge to be
> transported from its mooring and to be stored at Warsaw, Kentucky"
> somehow confers maritime jurisdiction. Again, however, examination of the
> precise language to which Hosea refers confirms that the obligation
> constitutes no more than an incidental requirement to effectuate the
> anticipated future sale or demolition, and is not itself a "primary objective."
>
> The language reads:
>
>> Following the Removal Completion Date and after the current
>> prospective purchasers have toured the Barge (which is estimated to be
>> August 16, 2014), [Hosea] will cause the Barge to be moved from its
>> current location to and moored at Mike Kautzman Landing in Warsaw,
>> Kentucky…at [Hosea's] expense….

(Doc. 15 at 12). In context, it is clear that the language required Hosea to make arrangements and pay for the expense of a third party (like C&B) to move the Barge after Hosea completed its removal of certain personal property, as opposed to Hosea itself transporting the vessel. In short, based upon the controlling authority of the Supreme Court's decision in *Kirby* and the Sixth Circuit's analysis in *New Hampshire Ins. Co.*,… the undersigned finds that the primary objective of the Hosea-Waterfront contract was not maritime in nature.

(Doc. 43 at 9-10) (emphasis original, footnotes omitted).

Despite this Court's conclusion that the breach of contract claim could not provide a basis for admiralty jurisdiction, the Court found that Hosea's negligence claim was sufficient to support jurisdiction. (*Id.* at 12). Again, the prior analysis is restated in part.

Waterfront maintains that admiralty jurisdiction cannot arise out of a maritime tort that relates solely to a Barge in which Hosea had no ownership interest.

* * *

Notably, Waterfront does not dispute that it owed Hosea some duty of care, whether as a business invitee or under the contract. Certainly, the contract anticipated that Waterfront would provide Hosea "access" to a Barge that was floating on the Ohio River, not submerged beneath it…. Based on the seminal case of *Sisson v. Ruby*, 497 U.S. 358 (1990), I conclude that Hosea has adequately asserted maritime jurisdiction over its negligence claims. In so concluding, the undersigned returns to the previously noted distinction between the failure to plead federal jurisdiction under Rule 12(b)(1) and the failure to state a claim under Rule 12(b)(6). *See Bush v. State Indus., Inc.*, 599 F.2d 780, 785 (6th Cir. 1979)("the fact that a complaint may not state claim upon which relief can be granted is of no relevance to the question of subject matter jurisdiction"); *Cherokee Exp. Inc. v. Cherokee Exp.. Inc.*, 924 F.2d 603, 609 (6th Cir.1991)("question of whether a complaint states a cause of action or a claim for relief calls for a decision on the merits not for a determination of jurisdiction"); *accord Pitstick Farms, Inc. v. Sanders Sales and Service, Inc.*, 2005 WL 1151684 (S.D. Ohio May 16, 2005).

Even if Hosea's negligence claim fails for other reasons, this Court cannot agree that the claim does not invoke maritime jurisdiction, since the claim centers on the issue of which party was to blame for the sinking of the Barge (either Waterfront or C&B, according to Hosea's amended complaint).

Under the test set forth in *Sisson*, Hosea's allegations of negligence that led to the sinking of the Barge involve activities: (1) "likely to disrupt [maritime] commercial activity, and (2) bear a "substantial relationship" with "traditional maritime activity." *Id.* at 364-367. Having determined that admiralty jurisdiction exists over the negligence claims, supplemental jurisdiction is appropriately exercised over all other claims asserted by Hosea.

(Doc. 43 at 11-12) (footnotes omitted). Ultimately, the Court granted summary judgment to Waterfront on the negligence claim despite finding that the claim provided the sole basis for federal jurisdiction. (Doc. 43 at 12, citing *Bush v. State Indus., Inc.*, 599 F.2d 780, 785 (6th Cir. 1979); *see also id.* at 33, granting summary judgment).

In its latest challenge to the subject matter jurisdiction of this Court, Waterfront argues that a central presumption made by this Court (and apparently by the parties themselves prior to Waterfront's latest motion) is incorrect; namely, that the Barge is a vessel and therefore subject to admiralty jurisdiction. The unrebutted evidence in the record supports Waterfront's position.

## B. Upending a Presumption: When a Barge Is Not a Vessel

Admiralty jurisdiction is conferred by 28 U.S.C. § 1331(1). As set forth above, this Court determined that no admiralty jurisdiction exists over the contract executed between Hosea and Waterfront, since admiralty jurisdiction ultimately is based upon "whether [the contract] has reference to maritime service or maritime transactions." *New Hampshire Ins. Co. v. Home Sav. and Loan Co. of Youngstown, Ohio*, 581 F.3d 420, 423 (6th Cir. 2009) (quoting *Norfolk S. Ry. Co. v. Kirby,* 543 U.S. 14, 24 (2004)) (additional quotation marks, citations, and editorial marks omitted). Although this Court also found admiralty jurisdiction existed over Hosea's now-dismissed negligence claim, that analysis was based upon a presumption that the Barge was a "vessel." Until the

Supreme Court narrowed the definition of "vessel" in 2013, this Court's presumption was reasonable, as the term "vessel" had been broadly construed. *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 489 (2005) (defining "vessel" as including "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water*"); In re Harbour Lights Marina, Inc.*, 146 B.R. 963 (Bankr. S.D. Ohio 1992), judgment aff'd, 153 B.R. 781 (S.D. Ohio 1993) (barge used as a floating restaurant constituted a "vessel" and therefore a lien on a barge came within admiralty jurisdiction). However, in 2013, the Supreme Court resolved a conflict among the circuits and narrowed the definition of what constitutes a vessel under maritime jurisdiction. *See Lozman v. City of Riviera Beach, Fla.*, 568 U.S. 115, 133 S. Ct. 735 (2013).

Until the Barge first broke free of its moorings in 2011, the Barge housed an operational restaurant known as the Waterfront. Waterfront has submitted evidence that the Barge was in fact built to be a floating restaurant more than 15 years ago. (Doc. 76-2, Declaration of Jeff Ruby, at ¶2). The restaurant did not reopen prior to its sinking on August 5, 2014.

Waterfront's motion rests upon its argument that – both when it was built and on the July 2014 date on which Hosea and Waterfront entered into the contract that forms the basis for this litigation, the Barge was not a "vessel" under 1 U.S.C. § 3. In *Lozman*, the Court explained that "a structure does not fall within the scope of this statutory phrase unless a reasonable observer, looking to the [vessel's] physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water." *Id.* at 121. *Lozman* concerned a dispute over a floating home. In looking at

the houseboat at issue, the Supreme Court found that the following characteristics demonstrated that it was not, in fact, a vessel: (1) the lack of any rudder or other steering mechanism; (2) its hull was unraked and it had a rectangular bottom 10 inches below the water; (3) it had no special capacity to generate or store electricity but could obtain that utility only through ongoing connections with the land; (4) its rooms looked like ordinary nonmaritime living quarters; (5) it did not have watertight portholes, but French doors and ordinary windows; and (6) it had no ability for self-propulsion, and had traveled by tow over water on only four occasions over seven years. *Id.* at 121-22, 133 S. Ct. at 741. "In a word, we can find nothing about the home that could lead a reasonable observer to consider it designed to a practical degree for 'transportation on water.'" *Id.* at 122.

Following *Lozman*, other courts have held that similar floating but fixed structures not intended to transport people or cargo are not "vessels" that fall under the limited scope of admiralty jurisdiction. *See, e.g., Martin v. Fab-Con, Inc.*, 9 F. Supp.3d 642, 649 (E.D. La. 2014) (holding that barge used as a "floating hotel" was not a vessel). In *Martin*, the court noted that the subject Barge had been stationary for the majority of the past five years and was primarily used as housing accommodations and for meetings. In determining the barge was not in fact a "vessel" subject to admiralty jurisdiction, the *Martin* court noted that the barge had "no rudder or other steering mechanism, is incapable of self-propulsion, has remained stationary for most of the past several years, and its interior is similar to living quarters on land," despite having a generator on board for a limited period of time, a slightly raked hull, and a more submerged bottom than the *Lozman* houseboat. *Id.* at 649. *See also Tendon v. Captain's Cove Marina of Bridgeport, Inc.*,

752 F.3d 239 (2d Cir. 2014)(floating dock moored to harbor floor is land, not a vessel); *Benoit v. St. Charles Gaming Co., Inc.,* 230 So. 3d 997 (La. Ct. App. 3 Cir., 2017) (holding that a boat that had not moved in 12 years and had been operating as a riverboat casino was not a vessel under general maritime law, and that employee was not a seaman under the Jones Act).[4]

Waterfront's argument that the Barge in this case never was a "vessel" intended to transport people over water, and was not a vessel at the time of the contract at issue, is persuasive. Unrebutted evidence indicates that the restaurant Barge was permanently moored to the land. It did not leave its moorings or navigate along the Ohio River. Like the houseboat in *Lozman*, the Barge was incapable of self-propulsion and had no rudder or steering mechanism. It had remained stationary since its original placement until its unintended breakaway in 2011, and subsequent relocation in 2014 for repairs. It was built as a restaurant, to serve food and drinks, and not as a method of transportation in navigable waters. It was entirely dependent on connections to the shore for its utilities. Applying the *Lozman* test, a reasonable observer would have viewed the structure as a restaurant moored to its dock. When operational, the Waterfront Restaurant served food and drinks, but did not offer tours of the river. The restaurant's employees consisted of wait staff, not seamen. After the restaurant ceased active operations in 2011, there is no evidence that the structure was suddenly converted to a vessel. Indeed, it did not possess essential features necessary for a boat used to transport people or cargo. Accordingly,

---

[4]At the time this R&R is being filed, *Benoit* cannot be considered as final since a petition for certiorari with U.S. Supreme Court remains pending.

federal jurisdiction over the negligence claim was improvidently assumed, because the Barge was not a vessel subject to maritime law.

## C. Dismissal of Remaining State Law Breach of Contract Claim

In Hosea's response, Hosea offers no argument that the Barge was a vessel, apparently conceding the controlling application of *Lozman*. Instead, Hosea argues that this Court "can and should <u>retain</u> jurisdiction given the extensive proceedings over which the Court has already presided." (Doc. 92 at 2, emphasis added). The undersigned shares Hosea's concern with the length of time that this breach of contract case has been pending. However, it is not entirely clear that the Court can "retain" jurisdiction that it never possessed, notwithstanding the initial faulty presumption that the Barge was a vessel.[5]

The general rule is that a district court should dismiss supplemental state law claims if the federal claims have been dismissed before trial. *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 319 (6th Cir. 1987); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 98 L. Ed. 2d 720, 108 S. Ct. 614 n.7 (1988) (recognizing that, in such cases, the balance of interest will usually point toward declining to exercise jurisdiction). When deciding to retain jurisdiction over a state law claim, a district court must consider "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims."

---

[5]Consolidated cases retain their singularity for purposes of jurisdictional analysis. It is worth noting that in the now-dismissed consolidated Case No. 1:15-cv-46, jurisdiction was predicated not solely under maritime law (which would have been erroneous) but also upon the clear diversity of the parties involved. By contrast, Hosea has long conceded the absence of diversity jurisdiction in its case.

*City of Chicago v. International College of Surgeons*, 118 S. Ct. 523, 534, 522 U.S. 156, 173 (1997).

The Sixth Circuit has repeatedly cautioned trial courts about the limits of their discretion to retain state law claims after all federal claims have been dismissed.

> Trial courts do possess some discretion to decide a pendent state law claim once the federal basis for jurisdiction is dismissed. A trial court must balance the interests in avoiding needless state law decisions discussed in *United Mine Workers* against the "common sense" policies of judicial economy discussed in *Rosado*, when deciding whether to resolve a pendent state claim on the merits. Through a series of cases following *United Mine Workers*, this circuit has adopted the position that the district courts have minimal discretion to decide pendent state law claims on the merits once the basis for federal jurisdiction is dismissed before trial. *See Service, Hospital, Nursing Home and Public Employees Union v. Commercial Property Services*, 755 F.2d 499, 506 n. 9 (6th Cir. 1985) ("this circuit has moved away from the position that the court has discretion to retain jurisdiction over a pendent state claim where the federal claim has been dismissed before trial."). However, in certain cases, the overwhelming interests in judicial economy may still allow a district court to properly exercise its discretion and decide a pendent state law claim once the federal claim is dismissed before trial.

*Province v. Cleveland Press Pub. Co.*, 787 F.2d 1047, 1055 (6th Cir. 1986).

In August 2017, this Court assumed that it could retain jurisdiction over the breach of contract claim after it granted summary judgment on the only possible federal claim. The question now is, does the passage of time and the changed circumstance - i.e., the recognition that admiralty jurisdiction *never* existed, repudiating any basis for supplemental jurisdiction - constitute the type of overwhelming interest that favors retention of improvidently assumed jurisdiction over a single state law breach of contract claim? Under controlling case law, the answer appears to be "No."

14

Both the Supreme Court and Sixth Circuit have suggested that the retention of supplemental jurisdiction over a state law claim is appropriate *only* when the original federal claim has sufficient "substance" to confer jurisdiction of the subject matter on the court in which the action is commenced. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); *Province*, 787 F.2d at 1055 n.10 (federal courts possess some discretion on whether to retain a state law claim only assuming "that the federal claim was originally substantial enough to confer federal jurisdiction"). On the facts presented here, the Barge was never a "vessel," meaning that there was never a "substantial" basis for this Court to assume the existence of federal jurisdiction. Even in the August 2017 R&R, when all parties and this Court erroneously assumed that the Barge was a vessel, the undersigned reasoned only that the negligence claim "<u>arguably</u> pleads a maritime tort," granting this Court jurisdiction. (Doc. 43 at 10, emphasis added). *See also generally, Fox v. Brown Memorial Home, Inc.*, 781 F. Supp.2d 718 (S.D. Ohio 2011) (discussing factors allowing supplemental jurisdiction, and factors required to retain jurisdiction after dismissal of federal claims).

In addition, even *if* this Court has discretion to retain jurisdiction over the remaining breach of contract claim, the relevant factors to consider when determining whether to retain supplemental jurisdiction after the dismissal of all federal claims disfavor retention of jurisdiction at this time. The sole factor in favor of jurisdiction is the passage of time, but it is not clear that any prejudice from dismissal would outweigh the benefit of a state court deciding the lone remaining issue of state law. Hosea served no discovery requests and did not take any depositions, choosing instead to rely solely on the discovery

conducted in the Insurance Policy case. The discovery disputes upon which this Court previously ruled all occurred between Waterfront and U.S. Fire. Discovery is now closed, and Waterfront's motion for summary judgment is fully briefed. Significantly, no federal trial date has been set. If this Court were to dismiss this case, it would appear that Waterfront could refile its dispositive motion and the parties would essentially be in the same position.

### D. Alternatively, if Jurisdiction is Retained, Waterfront Should be Granted Summary Judgment

Without the retention of jurisdiction, this Court has no authority to rule on Waterfront's renewed motion for summary judgment. However, to the extent that the presiding district judge would find a basis for the retention of supplemental jurisdiction by this Court, the undersigned alternatively would recommend that summary judgment be granted to Waterfront on the breach of contract claim.

In considering a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks and additional citations omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c), internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment- rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

16

Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356 (1986)*,* inferences are not to be drawn out of thin air.  Rather, once the moving party has demonstrated the absence of evidence to support the nonmoving party's case, the nonmoving party must "'go beyond the pleadings'" to show that "'there is a genuine issue for trial.'" *Horton v. Potter,* 369 F.3d 906, 909 (6th Cir.2004) (*quoting Celotex v. Catrett,* 477 U.S. 317, 324 (1986)). To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted).

This Court previously denied Waterfront's motion for summary judgment, but without prejudice to renew.  In denying Waterfront's prior motion, the Court acceded to Hosea's request "that a decision on… summary judgment be deferred to permit Hosea to conduct additional discovery…to locate and produce evidence that Waterfront knew or should have known of the likelihood the Barge would sink, or is otherwise liable for the sinking of the Barge." (*Id.* at 29).  The Court emphasized that "full discovery has yet to be completed," making judgment inappropriate "at this time."  (*Id.* at 29).  Thus, the Court denied Waterfront's first motion because "material issues of fact remain concerning whether Waterfront's conduct denied [Hosea's] access to a Barge that would remain above water for the duration of the contract, or whether Waterfront otherwise impeded (or directed C&B to deny) access to the Barge after July 8, 2014."  (Doc. 43 at 30).

Waterfront's renewed motion argues that even after the completion of discovery, Hosea remains unable to point to any evidence to show that Waterfront did anything to breach the contract – either by restricting Hosea's access or otherwise. The undersigned agrees that Waterfront is now entitled to judgment on the remaining breach of contract claim.

All material facts in this case are undisputed, and the express contractual obligations of both parties were previously set forth by this Court. The contract provided for Hosea to remove certain property from the Barge, but provided Hosea with no ownership rights to the Barge. "Hosea's claim of an ownership interest in personal property that remained on the Barge at the time of its sinking must give way to express language in the Hosea-Waterfront contract that refutes any such ownership interest." (Doc. 43 at 21).

> [T]he allegations of Hosea's ownership interest are contradicted by the express language of the Hosea-Waterfront contract, which is incorporated into Hosea's pleading as an exhibit attached to the amended complaint. When allegations in a complaint contradict an attached contract that forms the basis for the claims, the provisions of the contract control. *Apex Energy Grp., LLC v. Apex Energy Sols. Of Cincinnati, LLC*, 2013 U.S. Dist. LEXIS 14758 at *14, 2013 WL 394464 (S.D. Ohio Jan. 31, 2013) (Barrett, J.) (declining to accept allegations that "directly contradict the unambiguous language" of a contract attached to the complaint); *accord Ingram v. State Prop. & Bldg. Commission*, 309 S.W.2d 169, 172 (Ky. App. 1957)("[W]hen a cause of action is founded upon a written contract which constitutes a portion of the pleading and the contract contradicts the allegations of the pleading, the provisions of the contract control").

> As previously stated, the contract provided that title to the Barge was to remain with Waterfront. Contrary to Hosea's assertion of an ownership interest in the personal property that was physically located on the Barge, the language of the contract clarifies that ownership interest in that property would not inure to Hosea until after the removal of the first two categories of property destined for the warehouse. The contract sets forth its

> objectives in chronological fashion. The terms first direct Hosea to remove "previously tagged items" on July 8, 2014, with a second category of "chandeliers, mirrors and other miscellaneous items" to be removed on a "Removal Completion Date." (Doc. 15 at 11-12). The contractual language states that only <u>after</u> that condition will Hosea acquire a property interest in "remaining items." In addition to the chronological format of the stated provisions, the use of past and future tense is contextually clear. Thus, the contract specifies that only "<u>remaining</u> items" from the Barge "<u>will become</u> property of [Hosea], which will perform all legal requirements related to such removal and the sale, destruction or other disposition of these items…." (Doc. 15 at 11, emphasis added).

(Doc. 43 at 19-20, emphasis original).

As indicated by the forgoing language, the Court made clear that Hosea had no contractual ownership in the property that remained on the Barge or in the Barge's hull when it sank because the conditions precedent were never fulfilled. As in its current motion, in the earlier motion Waterfront asserted the impossibility of performance as grounds for summary judgment, since impossibility relieves parties from any further contractual obligation. In rejecting that defense in the prior R&R, the Court pointed out that Hosea had alleged that either C&B *or Waterfront itself* had caused the Barge to sink, and that discovery remained open. The Court reasoned that Hosea could theoretically recover "expectation damages" for breach of contract <u>if</u> (1) Hosea could prove that Waterfront had breached the contract by impeding access to the Barge prior to the sinking; and/or (2) Hosea could prove that Waterfront caused the Barge to sink, because the impossibility of performing a contract must not be attributable to the party asserting the defense. [6] (Doc. 43 at 28). Although Waterfront had offered some evidence in support

---

[6]In a practical sense, proof that Waterfront was responsible for sinking its own Barge could be viewed as a permanent form of denying access.

of its prior motion that it had not prevented access, the open period of discovery meant that Hosea might yet bring to light some contrary evidence.[7]

Waterfront's renewed motion should be granted because Hosea still has produced no evidence to refute Waterfront's evidence that it did not prevent Hosea access to the Barge between July 8, 2014 and August 5, 2014, and that it did not cause the Barge to sink. Although Hosea argues that some genuine issues remain that preclude summary judgment, the asserted issues are not *material*, because they rely on a contractual interpretation rejected by this Court – that Hosea possessed some form of ownership interest in the property or the Barge hull *after* it sunk.[8] To the contrary, the prior R&R made clear that Hosea had no contractual interest in the property or Barge hull *prior to the removal of the property*, and certainly did not gain such interest after the Barge sunk. Once the Barge was under water, both parties were relieved from any further contractual performance. Thus, as a matter of law, Waterfront had no contractual obligation to allow Hosea to access the Barge, or to salvage the hull or to move it after the Barge sank.

The record reflects that Hosea did not begin work immediately - not because of any "denial of access" by Waterfront - but because Hosea did not have the right personnel to perform the work at that time. Once Hosea was ready to begin its removal work in mid-

---

[7]However, the Court explicitly rejected "Hosea's contention that it has produced evidence that Waterfront or its agents refused Hosea access to the Barge" in June 2014 prior to the execution of the subject contract, finding such evidence to be irrelevant to the contract at issue. (Doc. 43 at 29).

[8]For example, Hosea argues that disputed issues exist concerning whether Waterfront "permitted a third party to salvage the Barge's hull rather than permitting Hosea to do so," and whether Waterfront "deprived Hosea of its contractually agreed upon 50% share of the scrap value of the Barge's hull." (Doc. 93 at 4). However, this Court previously interpreted the contract as requiring "Hosea to make arrangements and pay for the expense of a third party (like C&B) to move the Barge after Hosea completed its removal of certain personal property, as opposed to Hosea itself transporting the [Barge]." (Doc. 43 at 10, emphasis added). Because Hosea never completed removal of the designated property, no ownership interest arose. (*Id.*; s*ee also* Doc. 43 at notes 4 and 5).

July, it did so. (Doc. 90-1, Declaration at ¶3; Doc. 88, Abner Dep., 6:6-18; See also Doc. 93 at ¶¶ 12-13). Waterfront has produced an affidavit attesting that it did not tell C&B to prevent Hosea from accessing the Barge. (Doc. 90-1 at ¶3). Although David Hosea testified that the Barge needed to be "flipped around" to remove larger items, (Doc. 89 at 38:16-20), there is no evidence that Waterfront refused to accommodate that need. Rather, soon after the Barge was moved by C&B in the late afternoon or evening of August 4, 2014, it sank.

Given Waterfront's evidence that it did not interfere with Hosea's access or instruct C&B to interfere, Hosea must come up with some contrary evidence to show a material dispute exists concerning whether Waterfront did in fact deny Hosea access to the Barge. Hosea points to David Hosea's affidavit, filed in response to summary judgment. Without providing any details the affidavit states only generally that *C&B Marine* "restricted and limited Hosea's access" to the Barge. Although the affidavit asserts that C&B was Waterfront's "agent" when C&B allegedly restricted Hosea's access, Hosea concedes that it "is not aware of whether Waterfront Associates specifically issued such instructions to C&B Marine." (Doc. 93 at ¶ 11). In light of Waterfront's express denial of the same, there is no basis to conclude that any impediment to access allegedly imposed by C&B can be attributed to Waterfront. In addition, Hosea offers no argument or authority to support its conclusory assertion that C&B's alleged undefined action in restricting and limiting Hosea's access should be attributed to Waterfront under Kentucky's law on agency.

In sum, Waterfront's renewed motion unequivocally demonstrates that it did not impede access to the Barge between July 8 and August 5, 2014, and appropriately re-

asserts the impossibility defense based upon the completed record. Despite the completion of discovery, Hosea fails to offer any evidence that Waterfront was responsible for the sinking of the Barge. Rather, Hosea admits that Waterfront identified "at least two likely causes" for the sinking of the Barge, neither of which is attributable to Waterfront. (Doc. 93 at ¶¶15, 16, 17). Although Hosea disputes that the Barge was "dry" on August 4, 2014 when it was moved by C&B, Hosea does not deny that the Barge was "afloat…and stable" before being moved, and points to no evidence that Waterfront (and not C&B or an earlier collision) caused the impossibility of performance that resulted when the Barge sank. (Doc. 93 at ¶ 17).

### IIII.  Conclusion and Recommendations

For the reasons discussed above, **IT IS RECOMMENDED THAT** Waterfront's motion to dismiss for lack of subject matter jurisdiction (Doc. 91) be **GRANTED** and that this case be dismissed without prejudice. Only in the alternative, should the presiding district judge determine that the Court has discretion, and further exercise that discretion to retain supplemental jurisdiction over the breach of contract claim, does the undersigned recommend that Waterfront's renewed motion for summary judgment be **GRANTED**.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

HOSEA PROJECT MOVERS, LLC, et al.,        Lead Case No. 1:15-cv-799

        Plaintiffs,              Barrett, J.
                                 Bowman, M.J.

     v.

WATERFRONT ASSOCIATES, INC.,  et al.,

        Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).